## DAVID S. WARE

### v.

### PEOPLE, use, etc.

1. REPUBLICATION OF WILL, EFFECT OF.—The re-execution of the testator's will and codicils will have no other effect than a republication, and therefore will not revive legacies which have been advanced or satisfied.

2. EVIDENCE—DISCHARGE OF LEGACY.—Under the evidence in this case, the court is of opinion that it was the clear purpose of the testator in making the payments in question to plaintiff to discharge the legacy, and that it was so understood by plaintiff.

APPEAL from the Circuit Court of Montgomery county; the

Hon. W. L. GROSS, Judge, presiding.  Opinion filed February 25, 1886.

Mr. W. T. COALE and Mr. J. M. TRUITT, for appellant; as to re-publication of will, cited 1 Redfield on Wills, 291, 375 ; Langdon v. Astor's Ex'rs, 16 N. Y. 9.

Messrs. MILLER & McDAVID, for appellee; that the execution of a codicil with due formalities is a re-publication of the will and has the effect to make the will itself speak as if published at the time of the publication of the codicil, cited Brown v. Clark, 77 N. Y. 369 ; Brimmer v. Sohier, 1 Cush· 118 ; Haven v. Foster, 14 Pick. 534 ; 1 Jarman on Wills, 364; 1 Redfield on Wills, 371.

WALL, P. J.   It appears from the record in this case that Obadiah Ware published his last will on the 16th of September, 1871, whereby among other provisions he directed that there should be paid to each of his grandchildren who should be of lawful age at his death, the sum of one thousand dollars. The testator died on the 24th of September, 1876, having executed a codicil to this will some ten months before.

The codicil does not affect the provision referred to and is not important in this connection except so far as it may be treated as a re-publication of the will.   There was probate of the will and codicil and letters testamentary were duly issued to the appellant as executor.   On the 24th of December, 1878, the executor made report to the county court showing a partial settlement, and an order was entered requiring him to pay the legacies mentioned in the will.   On the 11th of February, 1879, Sylvester H. Schever, who is a grandchild of the testator, and who was of lawful age at the death of the latter, presented his petition to the county court asking for a citation to compel the executor to pay the legacy apparently due him under the will.

The executor appeared and there was a hearing on evidence submitted by the parties to the court, resulting in a judgment that the petition be dismissed at the cost of the said Schever.

The record does not disclose what was the point in issue at said hearing and on the trial of the present cause the circuit court declined to hear evidence offered by appellant to show what that issue was.

On the 9th of April, 1879, the executor sued a notice upon said Schever that he would, on a day named, apply to the county court for a modification of the order of December, 1878, vacating the same so far as the legacy to said Schever was concerned. To this no attention was paid by said Schever and an order was obtained declaring the legacy claimed by Schever to have been advanced during the lifetime of the testator. On the 25th of March, 1882, the executor made a final settlement of the estate, and was ordered by the court, among other things, to pay said Schever the sum of $32.07 as the balance due him, as distributee, and on the same day he paid this sum to Schever, who signed a receipt accordingly. On the 17th of February, 1885, Schever sued the executor on his official bond to recover the amount of the legacy. A trial was had by the court, a jury being waived, the issues were found for the plaintiff and judgment was rendered for the penalty of the bond, $72,000 as the debt, the amount of the legacy and interest, $1,270 as the damages, and costs, to be discharged on payment of the damages and costs.

The executor brings the case here by appeal and presents for our decision the points urged by him as defenses in the circuit court, viz.: 1st, that the legacy sued for was advanced in the lifetime of the testator; 2d, that there was an adjudication to this effect by the county court on the hearing of the citation to compel the payment of the legacy supported by the subsequent order declaring the legacy advanced; and 3d, that the plaintiff was barred by the order of final settlement in the county court and the receipt by him of the balance found due him by that order.

Upon the first point the appellant proved that the testator paid the plaintiff, July 3, 1872, one hundred dollars, for which the following receipt was given.

"Butler, July 3, 1872. Received of Obadiah Ware one hundred dollars toward my dowry," signed by the plaintiff.

On the 22d of December, 1873, he gave a similar receipt for $350, which was termed "toward my dowry." On the 30th of April, 1874, he gave a receipt for $26, which was described as "of my dowry" and on the 5th of October, 1874, he gave a receipt for $50, which was said to be "on my dowry from his estate."

These sums, aggregating $526, were paid at the dates mentioned in the respective receipts by the testator to the plaintiff. In March, 1875, the plaintiff wrote from Missouri to the testator informing him of his purpose to buy a farm, saying: "I can come in $126 of paying for the place. * * * I want to borrow $126 of you; besides you owe on my dowry $474;" and asks that he send him the aggregate of the two sums, $600.

In another letter he repeats the request and again refers to "$474, you owe me on my dowry," and in a third letter which bears date July 22, 1875, he says "My dowry is $474. I want to borrow $156 more" and proposes to pay interest on the $156.

It seems the request was complied with and the money sent about Aug. 9, 1875, and according to the testimony of the executor a receipt for $475 was given similar in its terms to the others. He states he saw this receipt in the handwriting of the testator and in his possession during his lifetime, signed by the plaintiff, and that not being able to find it among the papers of the testator he wrote out another and presented it to plaintiff, requesting him to sign it, which was done.

The plaintiff admits signing this last paper at the request of the executor, but does not admit that he had ever given such a receipt to the testator, and says when he signed this he supposed the executor was going to pay him some more money. He further says that the other receipts given by him were written by his grandfather, who frequently furnished him with money while he was away at school, for which no receipts were taken.

He admits that he did receive the $475 about the 9th of August, 1875, and at the same time also he received the $126 asked for in his first letter from Missouri, for which last sum he

gave his note with security. He also says that about a year before his death the testator told him he had given him all he intended to during his lifetime. This expression is ambiguous and it does not appear from the record what meaning it should bear.

It is conceded by counsel for Schever that if it was the intention of the testator that these various payments should be received upon the legacy, then it is discharged, and such is the law. Redfield on Wills, Part II, Chap. 13, section 13.

The will was executed in September, 1871. The plaintiff knew the provision contained therein relating to himself, and seems to have had the impression that he had a fixed and vested right to the sum named. He did not hesitate to ask for it, and in his letters he refers to the balance which he had not received, as so much owing to him. Counsel say, the word dowry is inapt and its use is not significant. True, the term, in a strict legal sense, was not applicable, but in its larger and more general sense it is just the term that would naturally occur to one having the view which seems to have been entertained by the plaintiff. In popular use the word is often employed as describing anything by way of a portion derived by one person from the estate of another, and was so used and understood here. Carefully weighing all the evidence we are convinced that it was the clear purpose of the testator in making these payments to discharge the legacy, and that it was so understood by the plaintiff.

His long acquiescence in the adverse ruling of the county court, and his delay for nearly three years after the final settlement and his acceptance of the same, then allowed him, to bring the present suit, strongly support this conclusion, which we think is irresistible when all the circumstances of the case are considered.

It is suggested that the execution of the codicil should be regarded as a repetition of the will, and as the payments referred to had already been made, the theory of ademption is untenable.

The codicil made no reference to this legacy and can only be regarded as a re-publication, but will not have the

effect contended for. The doctrine on this subject is stated in Redfield on Wills, Pt. I, Ch. 13, *374: "The re-execution of the testator's will and codicils will have no other effect than a re-publication. Hence it will not have the effect to revive legacies which have been advanced or satisfied."

It follows that upon the merits of the case the finding of the circuit court is, in our opinion, erroneous, and it is therefore unnecessary to discuss the legal effect of the various proceedings in the county court which are relied upon by appellant as a bar to the present demand. The judgment of the circuit court will be reversed, but the cause will not be remanded.

Reversed.